**BEAMON v. DALGARN CONST. CO. \***

No. 14646.

Court of Appeal of Louisiana. Orleans.

Dec. 11, 1933.

---

\*Rehearing denied January 2, 1934. Writ of certiorari denied by Supreme Court February 26, 1934.

P. M. Milner and A. E. Rainold, both of New Orleans, for appellant.

James G. Schillin, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff seeks to recover compensation under Act No. 20 of 1914 as amended. Defendant corporation admits that an industrial injury was sustained by plaintiff and that he was entitled to compensation during the period of disability, and avers that such compensation was paid to him from the date of the accident, September 10, 1930, to and including May 2, 1932, but maintains that on the day last mentioned plaintiff was discharged by the physicians as having "made a complete recovery from the accident," and that at that time he was "well and able to perform any and all forms of manual labor without any handicap or impediment."

The record shows that plaintiff is a negro laborer, and that while in the employ of defendant he was struck on the leg by a large piece of piling. He sustained a fracture of the fibula and of the internal malleolus, which are both bones of the leg. The fractures were a few inches above the ankle.

The bones were set at once, and an X-ray photograph taken almost immediately afterwards shows that after the said setting the bones of the leg were "in excellent position."

On December 11, 1930, three months after the accident, a radiographic examination of the fracture was made, and this examination showed "an old fracture of the internal malleolus in excellent position, completely united, and also a fracture of the lower portion of the shaft of the fibula about four inches above the joint, completely united, in excellent position."

On April 9, 1931, a further radiographic examination showed "union without any deformity."

On June 30, 1931, and February 13, 1932, further X-ray examinations were made, and both showed the bones to be "in excellent position and completely united."

On January 26, 1931, which was about four and one-half months after the accident, the surgeons who had been treating plaintiff reached the conclusion that there was no reason why he could not use his leg and foot except that there was atrophy due to disuse. They did not at that time discharge him as cured, but they did intimate in their report to defendant's insurer that plaintiff was malingering and that he could have returned to work had he been willing to do so. They suggested that "some admonitions * * * when he next reports to collect 'compensation' would be helpful."

During February, 1931, the surgeons reported that there was still disability due to long disuse and they stated that this condition should improve with the use of the injured member. On or about May 2, 1932, the surgeon in charge of the case concluded that plaintiff had entirely recovered and that he should return to work. Compensation payments were then discontinued, and this suit is the result.

Judgment was rendered in favor of plaintiff condemning defendant to pay to him compensation for four hundred weeks subject to a credit for the amounts already paid, and also requiring defendant to pay $175 for medical services as well as the fees of expert medical witnesses, which fees were fixed at $100. Defendant has appealed.

There is considerable medical testimony which is to some extent conflicting. The surgeon, who was in charge of the case from its inception, and the radiograph expert, unite in the view that recovery has been complete, whereas physicians who testified as witnesses produced by plaintiff felt that there was still disability, which one of them estimated at 50 per cent.

Although it is not denied that plaintiff, prior to the trial, had never walked with a stiff knee, and though it is not contended that he had sustained any injury to the knee, nevertheless, at the trial he walked with his leg stiff from the hip joint to the foot and stated that it was impossible for him to bend the knee. The doctor who had been treating him states that in order to determine whether the knee was in fact stiff, he caused plaintiff to disrobe and instructed him to assume a certain position, which from the description we believe is the attitude which in our childhood we termed "bending the crab," and that when plaintiff did so he bent or flexed the knee perfectly and apparently without pain. This fact appears to us to evidence a willful intent on plaintiff's part to deceive.

There is in the record a motion picture film which was exhibited to us on a screen and which showed two negro men on the bank of a bayou or canal engaged in attempting to catch crabs. According to the testimony of two witnesses, one of the men shown was plaintiff. The person who was pointed out as plaintiff was wearing a black sweater. The man in the picture who wore the black sweater had complete use of both legs. He walked without any noticeable limp and, in order to hurry from one crab line to another, ran at least once at a "dog trot." Plaintiff in rebuttal denied that he was the man shown in the picture as wearing the black sweater, and he stated that that was his companion on the crabbing expedition. He admitted that he was shown in the picture, but claimed

that he was the other man who appeared to be wearing light colored clothes. An examination of the motion picture film shows that even the other man had the free and complete use of both legs so that, even if it be true that the witnesses who took the picture mistook plaintiff for his friend, still the evidence given by the picture would be most damaging to plaintiff's case, because neither of the men walked with anything resembling, in the slightest degree, the limp which plaintiff exhibited in the district courtroom, and without which he claimed that he could not walk. But we believe that plaintiff was the man who in the picture was shown as wearing a black sweater. He admitted that he was the possessor of such a sweater and, in fact, on cross-examination when asked, "What color sweater did you have on?" replied, "A black sweater."

It is probably unnecessary to state that plaintiff was not aware of the fact that the motion picture was being made. It was taken by detectives after the attending physician had reported that in his opinion plaintiff was malingering.

If plaintiff's leg was in the condition in which he claims it was, he certainly would not have gone on the several crabbing expeditions which he admits he took part in. On each occasion he was required to walk several miles from his home, and, however much he may have needed the crabs, he would not have walked that distance had his leg been in the condition in which he claims it was.

We conclude that the finding made in the district court was obviously erroneous.

█ The allowance for medical service which was fixed in the judgment at $175 was also improperly made, for the evidence shows that defendant has already paid for such expenses the sum of $260.05, which is more than the amount for which under the statute a defendant is liable.

Plaintiff has already recovered compensation for the full term of his actual disability.

The judgment appealed from is annulled, avoided, and reversed, and plaintiff's suit is dismissed, at his cost.

Reversed.